IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AMERICAN POLYSTEEL, L.L.C,
a New Mexico Limited Liability Company,
successor to AMERICAN POLYSTEEL, INC.,
d/b/a AMERICAN POLYSTEEL FORMS,
a New Mexico Corporation and
BARRENBERG ENTERPRISES, INC.
a New Mexico Corporation,

        Plaintiffs,

vs.                                                                                                                            No. CIV 01-133 LFG

INSURANCE COMPANY OF NORTH AMERICA;
FIREMAN'S FUND INSURANCE COMPANY, and
FIDELITY AND GUARANTY INSURANCE
UNDERWRITERS, INC.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendant Fidelity and Guaranty Insurance Underwriters, Inc.'s ("Fidelity") Motion to Dismiss [Doc. 29]. Plaintiff American Polysteel, L.L.C. ("Polysteel") filed a response, and Fidelity replied. This matter can be decided on the briefs; oral argument is not necessary. For the reasons given below, the motion is granted, and Fidelity is dismissed from the case.

**Factual and Procedural Background**

This is an insurance coverage dispute wherein Polysteel seeks a declaratory judgment that Fidelity, one of Polysteel's insurers, has a duty to defend and indemnify Polysteel in a patent

infringement action brought by CIU Corporation ("CIU") against Polysteel's corporate predecessor. Polysteel[1] also asks for compensatory and punitive damages in connection with its causes of action alleging breach of contract, bad faith refusal to defend and indemnify, and violation of the New Mexico Unfair Insurance Practices Act. At issue is the question whether the Fidelity's policy coverage for "advertising injury" extends to CIU's allegations that Polysteel induced others to infringe CIU's patent on a certain type of concrete wall.

Polysteel brings this action against three insurance companies, each of whom issued a commercial general liability policy to Polysteel, covering different periods of time. Fidelity's policy, which covered the period from August 1, 1999 to August 1, 2000, contains a provision for "advertising injury" coverage, which is the subject of dispute in connection with this motion.

In its complaint in this action, Polysteel states that in 1993, it began marketing polysteel forms used in the construction of homes and buildings. It characterizes its product as follows:

> A polysteel form consists of two polystyrene panels joined together by metal connectors. The forms are stacked one of top of another, to form a wall. Concrete is then poured into the void between the two panels. The result is a wall of great structural strength and insulating capacity. After the wall is constructed, interior building materials, e.g. drywall, can be attached to the inside and exterior building materials, e.g. stucco, can be attached to the outside. Polysteel forms are essentially a low-weight, high insulation substitute for traditional bricks or concrete masonry units.

(Complaint, Doc. 1, at ¶ 11).

---

[1]American Polysteel, L.L.C. d/b/a American Polysteel Forms is the corporate successor to both Amercian Polysteel, Inc. and Barrenberg Enterprises, Inc. Although the CIU lawsuit was filed against American Polysteel, Inc., and the various insurance policies were issued to corporate predecessors of Polysteel, there is no dispute that American Polysteel, L.L.C. is an insured under the policies. The term "Polysteel" as used herein includes all predecessor and successor companies.

On April 27, 2000, CIU sued Polysteel in the United States District Court for the District of Montana. In that complaint (*see* Ex. 3 to Doc. 30), CIU alleged patent infringement claims against several defendants. CIU's Complaint does not specify exactly what its patent or patents cover. However, Polysteel states that CIU's patent is for a wall built out of polystyrene forms filled with concrete and stacked like bricks. Polysteel alleges that it holds a patent on the polystyrene forms used to build such walls. (Doc. 1, at ¶12; Doc. 31 at 2). In the Montana complaint, CIU does not allege that Polysteel directly infringed its patent by building or selling walls; rather, its allegation against Polysteel is that it and other defendants "actively induced infringement of [CIU's patent] in violation of 35 U.S.C. § 271(b) by the purchasers of the Polysteel forms which they sell." (Ex. 3 to Doc. 30, at 3).

Polysteel gave notice of CIU's suit to Fidelity on June 30, 2000. Fidelity denied the claim on August 1, 2000. The other two insurance companies who are defendants herein had not informed Polysteel of their coverage determination as of the date the complaint was filed in this case, and neither of those companies has joined in this motion to dismiss.

## Discussion

### Standards on Motion to Dismiss.

Fed. R. Civ. P. 12(b)(6) authorizes the defendant to move, before filing a responsive pleading, for dismissal of the complaint. A motion to dismiss challenges the legal theory of the complaint, not the sufficiency of any evidence that might later be adduced. The purpose of the rule is to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity. Neitzke v. Williams, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 1832 (1989); Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc., 988

F.2d 1157, 1160-61 (Fed. Cir. 1993). Disputed issues are construed favorably to the plaintiff, and all reasonable inferences are drawn in plaintiff's favor. United States v. Mississippi, 380 U.S. 128, 143, 85 S. Ct. 808, 816 (1965).

General Standards for Interpretation of Insurance Contracts.

The Court finds, and the parties agree, that the substantive insurance law of New Mexico is applicable in this diversity action. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938); Sena v. Travelers Ins. Co., 801 F. Supp. 471, 473 (D.N.M. 1992). Where the New Mexico Supreme Court has not addressed an issue, the federal court must determine what decision the state court would make if faced with the question, taking into account Supreme Court dicta, other court decisions in New Mexico, decisions of other states, federal decisions, and the general weight and trend of authority. Menne v. Celotex Corp., 861 F.2d 1453, 1464 n.15 (10th Cir. 1988); Armijo v. Ex Cam, Inc., 843 F.2d 406, 407 (10th Cir. 1988). Although a federal court may anticipate how the state court would rule on an unresolved issue of state law, it should not do so unless absolutely necessary. Valley Improvement Ass'n v. U.S. Fidelity & Guar. Corp., 129 F.3d 1108, 1119 (10th Cir. 1997).

Insurance is fundamentally a matter of state contract law. Sena, at 477. New Mexico law provides that the reasonable expectations of an insured regarding coverage should be protected. Servants of the Paraclete Great Am. Ins. Co., 857 F. Supp. 822, 830 (D.N.M. 1994). The test for determining whether an insurance company has a duty to defend its insured is one of reason: whether the defense sought is for a coverage which the insured desired to purchase and for which it paid premiums. Id. An insurer's duty to defend arises out of the nature of the allegations of the complaint brought against the insured; the existence and scope of the duty are determined by comparing the

4

factual allegations of the complaint with the language of the insurance policy's coverage provisions. Lopez v. N.M. Pub. Schs. Ins. Auth., 117 N.M. 207, 209, 870 P.2d 745, 747 (1994).

The issue for determination by the court is whether the allegations state a claim within the terms of the policy. American Employer's Ins. Co. v. Continental Cas. Co., 85 N.M. 346, 347, 512 P.2d 674, 675 (1973). If the allegations of the complaint are "arguably" or "potentially" within the scope of coverage, the insurer is obligated to defend. American Gen. Fire & Cas. Co. v. Progressive Cas. Co., 110 N.M. 741, 744, 799 P.2d 1113, 1116 (1990); State Farm Fire & Cas. Co. v. Ruiz, 36 F. Supp. 2d 1308, 1312 (D.N.M. 1999). If the complaint in the underlying suit is ambiguous in that it fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within coverage, the insurer has a duty to defend, if the allegations "tend to show an occurrence within the coverage." American Employer's, 85 N.M. at 348; Found. Reserve Ins. Co. v. Mullenix, 97 N.M. 618, 620, 642 P.2d 604, 606 (1982). It is only if the allegations of the complaint clearly fall outside the policy provisions, and it can be concluded as a matter of law that there is no basis for indemnity, that the insurer is relieved of its duty to defend. State Farm Fire & Cas. Co. v. Price, 10- N.M. 438, 442, 684 P.2d 524, 528 (Ct. App. 1984), *overruled on other grounds*, Ellingwood v. N.M. Investors Life Ins. Co., 111 N.M. 301, 805 P.2d 70 (1991).

Language of the Policy

The Fidelity policy advises Polysteel that it is insured against "'Advertising injury' caused by an offense committed in the course of advertising your goods, products or services." (Ex. 1 to Doc. 30, at 2). "Advertising injury" is defined as:

> injury arising out of one or more of the following offenses:

      a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

      b. Oral or written publication of material that violates a person's right of privacy;

      c. Misappropriation of advertising ideas or style of doing business; or

      d. Infringement of copyright, title, or slogan.

(Ex. 1 to Doc. 30, at 17).

Fidelity argues, Polysteel concedes, and the Court agrees, that the only applicable subdivision under the circumstances of this case is (c), referring to "misappropriation of . . . style of doing business." The question before the Court, then, is whether CIU's allegation that Polysteel induced infringement of its patent can "arguably" or "potentially" be characterized as a charge that Polysteel misappropriated CIU's style of doing business. The Court finds that it cannot and that Fidelity was therefore justified in its refusal to defend and indemnify Polysteel.

## Analysis

Polysteel characterizes CIU's complaint as alleging that Polysteel "advertis[ed] its polystyrene forms in such a way that other people, e.g. contractors, are building walls covered by CIU's patent." (Doc. 31, at 2). Fidelity argues that CIU's complaint alleges Polysteel induced patent infringement by selling its products, not by advertising them, and thus there is no coverage under the "advertising injury" provision of the policy.

In a coverage dispute involving an "advertising injury" claim, it is irrelevant whether the complaint in the underlying action actually uses words such as "marketing" or "advertising"; what is important is the nature of the suit against the insured, and whether the facts alleged in the

6

underlying complaint come within at least one of the subdivisions in the policy definition.

> Precise [the underlying plaintiff] alleged in its complaint that SST [the insured], among other things, 'advertises' products that infringe Precise's patent.  However, the insurance policy does not use 'advertises' or 'advertising' in the general sense, but details the four specific types of offenses that constitute 'advertising injury' [*i.e.,* the same four types listed in the Fidelity policy at issue in this case]. Consequently, regardless of whether Precise's complaint includes the term 'advertises' in general, the complaint must allege that SST specifically committed one of the four types of 'advertising injury' specified in the policy before United National has a duty to defend.

United Nat'l Ins. Co. v. SST Fitness Corp., 182 F.3d 447,  450 (6th Cir. 1999).

In Heritage Mutual Insurance Co. v. Advanced Polymer Technology, Inc., 97 F. Supp. 2d 913 (S.D. Ind. 2000), the plaintiff in the underlying lawsuit alleged that the insured had, among other things, induced patent infringement.  Quoting a policy definition of "advertising injury" identical to the one used in the Fidelity policy at issue herein, the court noted:

> An insurer's duty to defend necessarily depends upon the allegations, including the facts alleged, in the underlying complaint . . . While Heritage [the insurer] and APT [the insured] both agreed that these types of advertising-related risks would be insured, APT did not purchase coverage for all allegations of injury somehow relating to advertising.  Thus, Environ's [the underlying plaintiff's] mere use of such words as 'marketing' and 'advertisements' in its complaint, and its attachment of advertisements under Count I, reveals little in and of itself.

Heritage, at 918-19, 920.

CIU's complaint asserted that Polysteel actively induced infringement of CIU's patent "by the purchasers of the Polysteel forms which they sell."  The complaint does not mention the word "advertising" and does not directly allege that it was Polysteel's advertising and promotion activities which caused the injury.  And as the cases quoted above, and others, demonstrate,  coverage is not

7

necessarily found even where advertising or marketing are specifically alleged in the complaint. The language used is not dispositive; rather, the court must compare the facts alleged in the underlying complaint with the coverage as defined in the policy language.

New Mexico courts have not been faced with the question whether a charge of inducing patent infringement falls within the standard insurance policy definition of "advertising injury." However, a number of courts in other jurisdictions have held that such a claim is not within the coverage. In Mez Industries, Inc. v. Pacific National Insurance Co., 76 Cal. App. 4th 856, 90 Cal. Rptr. 2d 721 (1999), the underlying complaint alleged that the insured, a component manufacturer, caused or encouraged purchasers of its components to assemble them in a way which infringed the plaintiff's patents. As in the present case, there was no allegation that the insured directly infringed the underlying plaintiff's patents, only that it induced others to do so. In spite of the fact that "those activities by Mez [which caused the alleged infringement] necessarily involved its advertising activities, which encouraged and solicited others to buy Mez's products and assemble them in a particular manner," the court found that there was no potential for coverage and thus no duty to defend:

> We do not see how Mez's inducement of the infringement of Ductmate's particular patents reasonably could be considered to be the misappropriation of an 'advertising idea' or 'style of doing business' . . . [S]uch a construction would be offensive to both commonly understood meaning as well as common sense.

Id., 76 Cal. App. 4th at 862, 870.

The patents at issue in Mez "[c]learly . . . did not involve any process or invention which could reasonably be considered an 'advertising idea' or a 'style of doing business.'" Id., at 872. Those patents were for certain duct joint assemblies and seal arrangements in airflow conduction

8

systems (such as central heating and air conditioning systems) in buildings. The insured was alleged to have induced infringement of these patents by manufacturing, distributing and selling components used for the connection of joints in such airflow systems. This is a very similar allegation to the one made against Polysteel in the present case; Polysteel manufactures polystrene forms which, CIU alleges, it sells to builders who use the forms to build walls which infringe CIU's patents. As was true in Mez, the underlying patents do not involve any process or invention which could reasonably be considered an "advertising idea" or "style of doing business."

> [W]hen read in the context of the entire policy, the general circumstances of this case and simple common sense, the advertising injury provisions simply do not extend to patent infringement. Moreover, even if the policy language is not totally free from some ambiguity, Mez could not, in light of such contextual considerations, have had an objectively reasonable expectation of coverage for a claim of inducing wilful patent infringement. Therefore, such a claim would not be covered as an advertising injury offense.

Id., at 874.

Heritage, cited above, is another factually similar case which resulted in a holding of no coverage. The insured in that case produced underground piping systems consisting of a flexible inner supply pipe and an outer "secondary containment" pipe used, for example, by gasoline filling stations to transport fuel from storage tanks to fuel dispensers. The underlying plaintiff alleged in its complaint that the insured was selling underground containment chambers and pipe for use in secondary containment systems which infringed the plaintiff's patents. The court found that the complaint did not allege that the insured misappropriated either the patent-holder's advertising ideas or its style of doing business, and court defined "style of doing business" as a "company's comprehensive manner of operating its business." Heritage, at 928. The court noted also that there

was no allegation by the underlying plaintiff that the insured "absconded with certain aspects of its advertising" or "took its overall 'style' of operating its business," and without such allegations or underlying facts to support them, there could be no "advertising injury" coverage under subsection (c) of the definition. As was the case in Heritage, CIU has made no allegation in the underlying action that Polysteel absconded with its advertising or took its overall style of operating its business.

The Heritage court cited a Tenth Circuit case, Novell, Inc. v. Federal Ins. Co., 141 F.3d 983, 987 (10th Cir. 1998), for the definition of "style of doing business" as "a company's comprehensive manner of operating its business." The underlying complaint in Novell did not involve claims of patent infringement; however, it did require that the court interpret the term "misappropriation of style of doing business," and the court construed it narrowly:

> Further, although Ross [the underlying plaintiff] alleged plaintiff capitalized on his research, development, and marketing efforts for StampIt when it created and sold its competing ExpressDocs program, there was no allegation that plaintiff misappropriated Ross' comprehensive manner of operating his business. Accordingly, we conclude none of Ross' claims against the plaintiff constituted predicate offenses under the policy.

Novell, at 987-88.

A number of other cases hold that inducement of patent infringement does not constitute "advertising injury." The underlying complaint in SST Fitness, *supra*, alleged that the insured advertised, marketed, and sold products which infringed plaintiff's patents and also "induced other companies into manufacturing, using, advertising and selling products which infringed these patents." Id., at 448. The court held that, in spite of this language, the complaint did not allege an "advertising injury" of the type addressed in the commercial general liability policy and noted also that if the parties had intended for patent infringement to be included in the definition of "advertising injury,"

10

they could easily have included such language in the definition.  *See also*, Gencor Indus., Inc. v. Wausau Underwriters Ins. Co., 857 F. Supp. 1560 (M.D. Fla. 1994); Simply Fresh Fruit, Inc. v. Continental Ins. Co., 94 F.3d 1219 (9th Cir. 1996); and St. Paul Fire & Marine Ins. Co. v. Advanced Interventional Systems, Inc., 824 F. Supp. 583, 585-87 (E.D. Va. 1993), *aff'd*, 1994 WL 118029 (4th Cir. 1994):

> The facts simply do not give rise to a tort for unlawful taking of 'style of doing business'. . .  Patent infringement involving only the patents used in the manufacture of a single device does not even approach the showing of pervasive similarity in the overall manner of doing business that courts have previously recognized as necessary to successfully prove misappropriation of a 'style of doing business'. . .  [A]s with the direct infringement claim, AIS [the insured] cannot clear the predicate offense hurdle.  Specifically, nothing in the facts alleged would permit AIS to plead any of the five predicate offenses enumerated in the policy [under the definition of 'advertising injury'] in lieu of or alternatively to the inducement claim.  As a consequence, the inducement to infringe claim triggers no duty to defend or indemnify under the policy.

In addition, a number of cases hold that *direct* patent infringement does not fall within the standard policy definition of "advertising injury."  In Owens-Brockway Glass Container, Inc. v. International Ins. Co., 884 F. Supp. 363 (E.D. Cal. 1995), *aff'd*, 1996 WL 445082 (9th Cir. 1996), the court noted that "there is the glaring absence of the word 'patent' anywhere in the policy language defining advertising injury," Id., at 367, and held that the phrase "misappropriation of style of doing business" could not reasonably, in the light of common sense, refer to patent infringement:

> [N]either the term 'infringement of title' nor 'misappropriation of style of doing business' suggests coverage of patent claims when these terms are viewed in the context of their use.  One of the most significant parts of that context is that both terms are part of the definition of 'advertising injury.'  There is nothing about the term 'advertising injury' itself that remotely suggests coverage of patent infringement . . .  In effect, Owens [the insured] argues that the term

11

> 'advertising' should not be understood as a word in common usage but as a collection of letters defined for the first time in the policy. This is not a reasonable approach to policy interpretation. The term was chosen for a reason, that reason was to cover advertising related injuries, and patent infringement is a tort that does not normally occur in connection with advertising . . .

Id., at 367-68.

Although it could be argued that inducing patent infringement, as opposed to direct infringement, is more likely to occur in connection with advertising, the Court agrees with the cases described above which hold that the offense of inducing infringement is not the equivalent of a misappropriation of the overall style of operating a business and therefore does not fall within the policy definition of advertising injury. *See also*, Tradesoft Technologies, Inc. v. Franklin Mutual Insurance Co., 329 N.J. Super. 137, 746 A.2d 1078 (App. Div. 2000), holding that patent infringement is not within the commonly understood meaning of "advertising ideas" or "style of doing business," and noting that:

> [T]he effect of including patent infringement within the misappropriation definition would be to find that the parties went to considerable trouble to list numerous common law torts and numerous other specifically defined offenses but also intended to provide coverage for a separate and distinct class of claims, namely patent infringement, without so much as a passing reference to the concept or the theory. [Internal punctuation omitted].

Id., 746 A.2d at 1086.

The Court also finds, as other courts have, that the standard language used in the Fidelity policy is not ambiguous. *See, e.g.*, Mez, 76 Cal. App. 4th at 874; Gencor, at 1565 n.8; Owens-Brockway, at 366-68; Heritage, at 929-30. The court noted in Frog, Switch & Manufacturing Co. v. Travelers Insurance Co., 193 F.3d 742, 746 (3d Cir. 1999), that "Ambiguities must be construed

12

in favor of the insured because the insurer writes the contract, but a provision is ambiguous only if reasonable people could, in the context of the entire policy, fairly ascribe differing meanings to it."

This Court is not convinced that a reasonable person would consider inducement of patent infringement to fall within the meaning of "advertising injury," nor that theft of a particular product or method of construction constitutes misappropriation of a company's overall method of doing business. *See*, Frog, Switch, at 749-50 ("ESCO alleged not that Frog copied a style of doing business – a plan for interacting with consumers and getting their business – but that Frog copied a particular product line that might be attractive to consumers"); Heritage, at 928 ("copying a particular product fails to constitute copying an overall style of doing business").

> As for the definition of 'style of doing business,' we concur with the vast majority of courts that have ascribed to the phrase a plain and working meaning when it is read in context – a style of doing business is a 'company's comprehensive manner of operating its business.' [Citing, *inter alia*, Novell, *supra*, a Tenth Circuit case]. . . Neither Environ [the underlying plaintiff], in its complaint, nor APT [the insured], in its briefs, informs us about the nature of Environ's overall business, the number of products that Environ produces, whether the piping product in APT's advertisement represents Environ's marquee product or overall signature, whether the depicted product reflects Environ's plan for interacting with consumers and getting their business, or how Environ generally operates its business and presents itself to the public.

Id., at 928-29. The same is true in this case. The Court is not persuaded by Polysteel's argument that CIU's entire business consists solely of holding a patent. Even if this were true, it would not render CIU's claim as one for misappropriation of a "style" of doing business.

Polysteel cites the case of Everett Associates, Inc. v. Transcontinental Insurance Co., 57 F. Supp. 2d 874 (N.D. Cal. 1999), to support its argument that patent infringement is covered by the standard "advertising injury" clause. Indeed, Everett so held. However, as Fidelity points out,

13

Everett's authority was considerably eroded by a later decision in that case, wherein the same court noted that it had incorrectly predicted the trend of California state insurance law.  In Everett Associates, Inc. v. Transcontinental Ins. Co., 141 F. Supp. 2d 989 (N.D. Cal. 2001), the court ultimately found there was no duty to indemnify because the state courts had, in the interim between the first and second Everett decisions, clarified their position on the question of advertising injury coverage for patent infringement, holding that the 1996 amendment to the statutory definition of "patent infringement," to include "offers to sell," did not turn patent infringement into a type of advertising injury.

The Court finds that CIU's claims against Polysteel in the underlying suit do not allege misappropriation of CIU's overall style of doing business and do not fall within the "advertising injury" coverage of the Fidelity policy.  Because no predicate offense under the policy definition of this type of injury has been shown, the Court need not reach the issue of whether Polysteel committed the offense "in the course of advertising [its] goods, products, or services," as also specified in the Fidelity policy.

In addition to seeking a declaratory judgment, Polysteel alleges causes of action for bad faith and violation of the New Mexico Unfair Insurance Practices Act.  Although the question is not entirely settled, the Court finds that New Mexico courts would likely hold that dismissal of the coverage claim means that the cause of action for bad faith in handling the insurance claim must also be dismissed.  See, Charter Services, Inc. v. Principal Mut. Life Ins. Co., 117 N.M. 82, 868 P.2d 1307 (Ct. App. 1994).

In any case, the allegations of Polysteel's complaint do not state a claim for bad faith.  As discussed above, Fidelity had a sound basis for refusing to defend Polysteel against the claims of

14

inducing patent infringement, and it responded promptly to Polysteel's request for coverage and a defense. An insurer need only conduct such inquiry as is reasonable under the circumstances. G & G Servs., Inc. v. Agora Syndicate, Inc., 128 N.M. 434, 440, 993 P.2d 751, 757 (Ct. App. 2000). In order to constitute bad faith, an insurer's failure to pay a claim must be "frivolous or unfounded." United Nuclear Corp. v. Allendale Mut. Ins. Co., 103 N.M. 480, 485, 709 P.2d 649, 654 (1985); Gallegos v. Citizens Ins. Agency, 108 N.M. 722, 730, 779 P.2d 99, 107 (1989).

> 'Unfounded' in this context does not mean erroneous or incorrect; it means essentially the same thing as reckless disregard, in which the insurer utterly fails to exercise care for the interests of the insured in denying or delaying payment on an insurance policy ... It means an utter or total lack of foundation for an assertion of nonliability – an arbitrary or baseless refusal to pay, lacking any arguable support in the wording of the insurance policy or the circumstances surrounding the claim.

Jackson Nat'l Life Ins. Co. v. Receconi, 113 N.M. 403, 419, 827 P.2d 118, 134 (1992).

Polysteel's allegations of typographical errors in the denial letter sent by Fidelity do not rise to this level. The claims against Fidelity under Polysteel's third cause of action based on the New Mexico Unfair Insurance Practices Act must also be dismissed, as they are principally based on a failure to acknowledge and act reasonably promptly upon Polysteel's request for coverage, and failure to affirm or deny coverage within a reasonable time. These claims may apply to the other two insurance companies involved in this case, but they do not apply to Fidelity under the facts alleged in Polysteel's complaint.

15

## **Order**

IT IS THEREFORE ORDERED that the Motion to Dismiss [Doc. 29] filed by Fidelity and Guaranty Insurance Underwriters, Inc. is granted, and Fidelity is dismissed as a Defendant in this case.

_____
Lorenzo F. Garcia
United States Magistrate Judge